UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOFT-AID, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) |
| SAM-ON-DEMAND, LLC and | ) |
| DAVID MANSFIELD, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED COMPLAINT AND JURY DEMAND

### INTRODUCTION

Soft-Aid, Inc. ("Soft-Aid") brings this action to recover damages arising from infringement of its copyrights and for other legal wrongs by SAM-ON-DEMAND, LLC ("SOD") and David Mansfield ("Mansfield") (collectively "defendants"), and to enjoin defendants' future infringement and commission of other legal wrongs. By their conduct, defendants have infringed Soft-Aid's copyrights, violated the Lanham Act by falsely designating the origin of software and other intellectual property, engaged in unfair competition, misappropriated trade secrets and/or confidential information, engaged in common law unfair competition and unfair and deceptive trade practices in violation of G. L. c. 93A, §11 and have been unjustly enriched. Soft-Aid seeks damages, an accounting, the imposition of a constructive trust upon defendants' illegal profits and injunctive relief.

### THE PARTIES

1.      Plaintiff, Soft-Aid, is a Massachusetts corporation duly organized with a principal place of business in Woburn, Middlesex County, Massachusetts. Soft-Aid is engaged in the

business of providing Software Asset Management ("SAM") consulting services and products. One of the professional services that Soft-Aid frequently provides is to help organizations ("Customers") develop baselines or reconciliations of their software license entitlements from vendors that include, but are not limited to, Microsoft Corporation ("Microsoft") and compare them to software inventory figures/deployments.

2.      Defendant, SOD, is an LLC organized under the laws of the State of Nebraska with a principal place of business in Omaha, Nebraska.  SOD is engaged in the business of providing SAM consulting services and products.

3.      Defendant, Mansfield, is an individual and is a resident of the State of Nebraska. Mansfield is the principal of SOD and is in control, and directs the activities and business, of SOD.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over plaintiff's copyright infringement and Lanham Act claims and related claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has supplemental jurisdiction over Soft-Aid's claims arising under the laws of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Soft-Aid's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Upon information and belief, defendants have conducted business and committed illegal acts in Massachusetts and elsewhere both before and after receiving a cease and desist notice from Soft-Aid.  Upon information and belief, Mansfield (a) personally participated in and/or had the right and ability to direct and control the wrongful conduct of SOD, and (b)

2

derived direct financial benefit from that wrongful conduct.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a)

because, on information and belief, the defendant has committed acts of infringement and other

wrongful conduct in the Commonwealth of Massachusetts; plaintiff is a Massachusetts

corporation, conducts business in Massachusetts and derives financial benefit from that business,

and defendants continued their wrongful conduct after receipt of a cease and desist notice; and

defendants may be found in the Commonwealth of Massachusetts.

## FACTS COMMON TO ALL CLAIMS

8.     Soft-Aid develops original SAM programs and tools, some of which involve

computer code, and advertises and markets professional services that use these unique and

original programs, tools, and/or other original works of authorship.  Some of these programs and

tools were designed and tailored for primary use when providing services to Microsoft and

organizations in SAM Consulting Engagements that Microsoft initiates, sponsors, and/or funds

("Consulting Engagements").

9.     These programs, tools, and other original works of authorship include, but are not

limited to, the following work product and/or deliverables that are shared, submitted and

primarily relied upon by both Customers and Microsoft as part of SAM Consulting Engagements

that Microsoft initiates, funds and/or sponsors : (1) a Statement Of Work ("SOW") shared with

Customers and submitted to Microsoft as part of Microsoft's own required deliverables that

includes, but is not limited to, the scope, tasks, timelines, deliverables and resources in these

SAM Consulting Engagements that Microsoft funds; (2) computer code used to generate an

Effective License Position document ("ELP" or "ELP Code"), also known as a SAM Baseline,

that is formally submitted to both the Customer and Microsoft as part of required deliverables (or

submissions) dictated by Microsoft and heavily relied upon by these and other parties. These

parties include, but are not limited to, software resellers who receive the data from either

Microsoft, the provider of the SAM Consulting Engagement, or the Customer and rely on this

output and data for preparing quotes for license purchases for Customers who participated in a

Consulting Engagement as part of Microsoft's funded SAM Programs; (3) computer code used

as part of work product to query the database of a specific third-party software and hardware

inventory tool (Microsoft [System Center] Configuration Manager [ConfigMgr or SCCM]) and

generate a list of computer processors by machine, identify virtual operating system

environments (virtual OSEs) and/or list detail of Microsoft software installed on individual

machines; and, (4) a Microsoft Product and Environment Questionnaire that is used to facilitate

the gathering of relevant information about the Customer for properly executing the

aforementioned Consulting Engagements.  These programs and tools also include, but are not

limited to, original notes, wording, bundling, and visual/textual representation of data in the ELP

deliverable to Microsoft and Customers.  The ELP deliverable is primarily designed to document

the Customer's software license gaps and is used by Microsoft to determine and police

infringements of its own copyrights among its customers and force its customers to make

purchases of the requisite software licenses to fill any gaps discovered in these Consulting

Engagements.  Microsoft has encouraged its partners who are approved by Microsoft to

participate in these funded Consulting Engagements to develop customer-centric versions of the

ELP and recognizes that this is a competitive advantage for such partners. The aforementioned

computer code that generates the ELP document that is submitted to Microsoft as a required

deliverable is used to render and transform various customer-centric versions of software license

and inventory data for a specific Customer, which (for Soft-Aid) are, in and of themselves,

original, highly valuable and represent a significant investment of resources, into the version of the ELP that Microsoft requires be submitted before it will release final payment to its designated partner for services rendered.

10.     Soft-Aid holds a valid copyright in its computer code used to create an EFFECTIVE LICENSE POSITION for submission to Microsoft that has been duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for computer code used within Microsoft Excel for generating the ELP, bearing the number TXu 1 808-879, is attached hereto as Exhibit A and is incorporated by reference.

11.     Soft-Aid holds a valid copyright in its STATEMENT OF WORK that has been duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for a "Standard SOW and Project Plan Template for Microsoft SAM Consulting Engagements," bearing the number TXu 1-867-104, is attached hereto as Exhibit B and is incorporated by reference.

12. Soft-Aid holds valid copyrights in computer code used to generate data necessary to create the Consulting Engagement deliverables.  A true and correct copy of the Registration Certificates for "Code for Core and Physical Processor Count by Machine and Virtual Machine Identification Query in [Microsoft's] Configuration Manager" and "Software by Machine Query for [Microsoft's] Configuration Manager" bearing the numbers TXu 1-867-060 and TXu 1-867-067, respectively, are attached hereto as Exhibits C  and D and are incorporated by reference.

13. Soft-Aid holds a valid copyright in its Microsoft Product and Environment Questionnaire that has been duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for a "Microsoft Product Environment Questionnaire" bearing the number TXu 1-867-061, is attached hereto as Exhibit E

and is incorporated by reference.

14. Soft-Aid holds a valid copyright in Visual Art for the Effective License Position (ELP) that has been duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for "Representation of Certain Bundled Microsoft Products in Microsoft License Position" bearing the number VAu 1-146-874, is attached hereto as Exhibit F and is incorporated by reference.

15. Soft-Aid holds a valid copyright in original wording, notes, and textual representation of data in the ELP that has been duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for a "General Representation of Microsoft Products in Microsoft License Position Analysis" bearing the number TXu 1-869-448, is attached hereto as Exhibit G and is incorporated by reference.

16. In 2004, Soft-Aid's predecessor and President, David Yashar ("Yashar"), developed a partnering and vendor relationship with Microsoft whereby Microsoft selected, invited, hired and paid Yashar (and later Soft-Aid) to provide SAM and software license compliance consulting services to Microsoft customers (Microsoft's SAM Programs). This relationship has continued from late 2004 through the date of this filing. In Microsoft's SAM Programs in the U.S., Microsoft generates leads and qualifies opportunities for Consulting Engagements and selects among its approved partners/vendors to work with Customers in performing such work. Yashar was retained by Microsoft after being "highly recommended by a few people" at Microsoft. Yashar was then extensively involved in helping Microsoft to launch its initial Software Asset Management Program in the U.S. by engaging in a pilot Consulting Engagement, providing feedback to Microsoft on the same, advising Microsoft on how to structure these paid/sponsored engagements, helping to define the set of deliverables to

Customers and Microsoft, and working with Microsoft employees in a newly created Software

Asset Manager role to mentor them, among other tasks.   Soft-Aid became a "Certified Partner"

of Microsoft's in 2004 and is currently at a Gold (Partner) Level with a recognized competency

in Software Asset Management among other designations.

17.     Yashar did business as a sole proprietor doing business as Soft-Aid until he

caused the incorporation of Soft-Aid, Inc. in 2008.

18.     In early 2006, Microsoft informed Yashar that Mansfield had approached

Microsoft to try and work directly with Microsoft as a partner in its funded Software Asset

Management Programs.

19.     Microsoft further informed Mansfield that while it was not accepting new

partners/vendors to participate in its funded Software Asset Management Programs, that

Mansfield could approach one of its existing partners/vendors in such programs, e.g.. Yashar,

and try to work as a sub-contractor.

20.     In 2006, at Mansfield's request in order to participate in some manner or form in

Microsoft's funded Software Asset Management Programs from which he was excluded by

Microsoft, Mansfield became a sub-contractor of Yashar who provided Mansfield with his

Consulting Agreement ("Agreement") which spelled out the major terms of their contractor to

sub-contractor relationship.

21.     At or about the time that Soft-Aid was incorporated, Yashar transferred to Soft-

Aid all of the intellectual and physical assets acquired and created as a sole proprietor doing

business as Soft-Aid.

22.     Mansfield/SOD (Mansfield created SOD in 2007 on information and belief)

worked as a sub-contractor with Yashar and Soft-Aid until June of 2011 when Mansfield

7

terminated the relationship and proceeded to work with Microsoft to develop a direct

partner/vendor relationship in Microsoft's funded SAM Programs. Over the course of their five-

plus-year relationship, Soft-Aid provided, trained, and mentored Mansfield/SOD with

intellectual property solely owned by Soft-Aid, for which Mansfield/SOD made an express

request, which included Mansfield/SOD shadowing a Soft-Aid consultant on several

engagements to observe and learn how Soft-Aid's intellectual property was to be used in order

that Mansfield/SOD could efficiently and effectively perform tasks and produce the necessary

deliverables for Customers and Microsoft as a sub-contractor to Soft-Aid in these Consulting

Engagements.

23.     The Agreement notified Mansfield/SOD of Yashar's confidential information and

intellectual property and stated that Yashar retained "all right title and interest in and to its

intellectual property." Yashar also verbally notified the defendants of the same and Mansfield,

eager to participate in Microsoft's funded SAM Programs and "to get our arrangement

finalized," verbally acknowledged and agreed to this and other terms in the Agreement.

24.     At the time that Mansfield/SOD terminated its relationship with Soft-Aid, they

acknowledged and confirmed in writing that they would not copy and/or use Soft-Aid's

intellectual property.

25.     Soft-Aid's registered and non-registered copyrights, which registered copyrights

are itemized in paragraphs 10 through 15, constitute valuable intellectual property, trade secrets

and confidential information.

26.     After termination of its sub-contractor relationship with Soft-Aid, and despite

written and verbal assurances that they would not use Soft-Aid's intellectual property,

defendants continued copying and using Soft-Aid's intellectual property to execute Consulting

8

Engagements in Microsoft's funded SAM Programs.

27.     On October 16, 2012, Soft-Aid, through its counsel, issued a cease and desist demand letter to SOD/Mansfield.  No meaningful response was ever received.  Soft-Aid also attempted to enlist the assistance of Microsoft in advising and directing SOD/Mansfield to cease and desist its copyright infringement activities in Consulting Engagements funded and/or sponsored by Microsoft.  At the time that SOD/Mansfield ceased being a sub-contractor to Soft-Aid in June 2011, on information and belief, Microsoft knew or should have known of the following: (1) the relevant terms in the Agreement between SOD/Mansfield and Soft-Aid and that SOD/Mansfield had been working as a sub-contractor to Soft-Aid in these Microsoft funded Consulting Engagements; (2) SOD/Mansfield's wrongful conduct and misappropriation of Soft-Aid's copyrights.  On or around the time that SOD/Mansfield terminated its sub-contractor relationship with Soft-Aid, Microsoft actively facilitated the process for SOD/Mansfield to work as a direct vendor and partner to Microsoft (and cease working as a sub-contractor with Soft-Aid) in Microsoft's funded SAM Programs, and, on information and belief, Microsoft encouraged other Microsoft partners to work with and provide support to SOD/Mansfield in this role.  At the time that SOD/Mansfield terminated its sub-contractor relationship in June 2011, Soft-Aid reminded Microsoft of the terms of its relationship with SOD.  Then, in May of 2012, around the time that the infringement and illegal copying became fully known to and documented by Soft-Aid, Soft-Aid formally notified Microsoft of such wrongful conduct and infringement by SOD/Mansfield; at the time, Microsoft advised Soft-Aid that it was unwilling to discuss these matters further or take any remedial action.  To Soft-Aid's knowledge, Microsoft did not discuss these claims and matters with SOD/Mansfield or cease to direct sales opportunities to SOD/Mansfield for Consulting Engagements conducted on Microsoft's behalf.

In November 2012, Soft-Aid broached the topic again and Microsoft accepted information and documentation from Soft-Aid to identify and confirm the infringements and wrongful conduct by SOD/Mansfield under the then stated pretense that Microsoft "takes copyright infringement seriously" and despite separately publicizing a "responsibility to [Microsoft] shareholders to protect its [own] intellectual property," on information and belief, Microsoft continued to take no remedial action.

28.     Thereafter, in defiance of the cease and desist demand, on information and belief, defendants continued to infringe plaintiff's copyrights and misappropriate its intellectual property both inside and outside of Massachusetts.

29.     On information and belief, defendants' wrongful conduct includes the misappropriation of Soft-Aid's proprietary information, infringing Soft-Aid's copyrights and falsely representing the origin of its services and products.

30.     On information and belief, Soft-Aid has been injured and has sustained damages as a direct and proximate result of defendants' wrongful conduct.

## COUNT I

### (Copyright Infringement)

31.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30, inclusive.

32.     Soft-Aid is the sole owner of the aforesaid copyrights and Certificates of Registrations.

33.     Defendants have infringed the copyrights referenced in Exhibits A & B, and on information and belief C-G, by unauthorized use of the same.  Since the termination of the sub-contractor relationship between SOD/Mansfield and Soft-Aid and as of the date of this filing, no

license or rights of any kind has been provided by Soft-Aid in any form to copy, use, distribute, reproduce, modify, or create derivative works of Soft-Aid's intellectual property and copyrights among other items to either SOD/Mansfield or Microsoft; nor, as of the date of this filing, has any similar license or rights of any kind been provided to Customers that are engaged by Microsoft or SOD/Mansfield for work conducted by SOD/Mansfield and funded by Microsoft as part of Microsoft's SAM Programs.

34.     Defendants' conduct has been willful within the meaning of the Copyright Act. At a minimum, defendants acted with willful blindness to, and in reckless disregard of, Soft-Aid's registered and other copyrights.

35.     As a result of the wrongful conduct, defendants are liable for copyright infringement. 17 U.S.C. § 501. Soft-Aid has suffered damages, and it is entitled to recover its damages, which include any and all profits defendants have made as a result of the wrongful conduct. 17 U.S.C. § 504. Alternatively, Soft-Aid is entitled to statutory damages under 17 U.S.C. § 504(c).

36.     In addition, because defendants' infringement has been willful within the meaning of the Copyright Act, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

37.     Soft-Aid is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Soft-Aid has no adequate remedy at law for defendants' wrongful conduct because, among other things, (a) Soft-Aid's copyrights are original, unique and valuable property which have no readily determinable market value, (b) defendants' infringement harms Soft-Aid such that Soft-Aid could not be made whole by any monetary award, and (c) defendants' wrongful conduct, and the resulting damage

to Soft-Aid, on information and belief, is continuing.

38.     Soft-Aid is also entitled to recover its attorneys' fees and costs of suit.  17 U.S.C.
§505.

39.     Soft-Aid requests whatever other relief is just and appropriate.

## COUNT II

### [§ 43(a) of the Lanham Trademark Act, set forth at 15 U.S.C.§ 1125(a)]

40.     Soft-Aid repeats and incorporates by this reference each and every allegation set
forth in paragraphs 1 through 39, inclusive.

41.     Because of Soft-Aid's long, continuous, and exclusive use of these copyrights,
they have come to mean, and are understood by customers, end users, and the public, to signify
software or services of Soft-Aid.

42.     By their wrongful infringement of the SOW and computer code used to generate
the ELP deliverable and Soft-Aid's other copyrights, defendants are falsely representing
themselves as the source and owner of these valuable copyrights and intellectual property.

43.     Upon information and belief, defendants engaged in such wrongful conduct with
the willful purpose of misleading, deceiving, or confusing customers, end-users, and the public
as to the origin and authenticity of the copyright and services offered, marketed or distributed in
connection with and are trading upon Soft-Aid's goodwill and business reputation.  Defendants'
conduct constitutes (a) false designation of origin, (b) false description, and (c) false
representation that the SOW, ELP Code, and Soft-Aid's other copyrights originate from or are
authorized by Soft-Aid, all in violation of § 43(a) of the Lanham Trademark Act, set forth at 15
U.S.C.§ 1125(a).

44.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

45.     As a result of defendants' wrongful conduct, Soft-Aid has suffered and will continue to suffer damages. Soft-Aid is entitled to injunctive relief. Soft-Aid has no adequate remedy at law for defendants' wrongful conduct because, among other things, (a) Soft-Aid's copyrights are original, unique and valuable property which have no readily-determinable market value, (b) defendants' installation, distribution, use, and reliance on the SOW, the code used to generate the ELP and/or Soft-Aid's other copyrights constitutes harm to Soft-Aid, such that Soft-Aid could not be made whole by any monetary award, and (c) defendants' wrongful conduct, and the resulting damage to Soft-Aid, is continuing.

46.     Plaintiff requests such other further relief as is just and proper.

## COUNT III

### (Misappropriation Trade Secrets/Confidential Information-Common Law and G.L. 93 §42A)

47.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 46, inclusive.

48.     The SOW, ELP code, and other registered and non-registered copyrights, their associated registrations and all related information both before and after the registrations contain trade secrets and confidential information of Soft-Aid both at common law and trade secrets under G. L. c. 93 §42A.

49.     Soft-Aid took reasonable steps to preserve the secrecy of these trade secrets and confidential information including among other things, marking the relevant documents, including oral and written notice to defendants.

50.     Defendants had a duty not to use or disclose Soft-Aid's trade secrets or confidential information without paying for them.

51.     Defendants breached their duty and wrongfully misappropriated these trade

secrets and confidential information by disclosing and using Soft-Aid's trade secrets and confidential information to without paying for them.

52.     Soft-Aid has been damaged by defendants' breaches of their duty not to misappropriate these trade secrets and confidential information.

53.     Soft-Aid is entitled to full compensation for its damages resulting from defendants' misappropriation of Soft-Aid's trade secrets and confidential, in an amount to be determined at trial, but not less than the monetary gain that defendants have obtained from their breaches of their duty not to misappropriate Soft-Aid's trade secrets and confidential information.

54.     Soft-Aid is entitled to recover the profits that defendants have realized from its wrongful appropriation of Soft-Aid's trade secret and confidential information.

55.     Soft-Aid is entitled to multiple damages and attorneys' fees for the misappropriation of its trade secrets pursuant to G.L. c. 93 § 42.

56.     Plaintiff requests whatever further relief is just and proper including, but not limited to, an injunction to enjoin any wrongful conduct of the defendants

## COUNT IV

## (BREACH OF CONTRACT)

57.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 56, inclusive.

58.     By acknowledging Soft-Aid's intellectual property and agreeing not to make unauthorized use of the same, defendants entered into a contract with the plaintiff in exchange for the plaintiff's employing defendants as a sub-contractor.

59.     Soft-Aid has performed all of its obligations under the contract and defendants have breached the same.

14

60.     As a direct and proximate result of defendants' breach, Soft-Aid has been injured and plaintiff seeks damages.

61.     Plaintiff further seeks an injunction because, on information and belief, defendants are continuing their wrongful conduct.

## COUNT V

## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

62.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 61, inclusive.

63.     In Massachusetts, every contact includes an implied covenant of good faith and fair dealing.

64.     This covenant provides that neither party will do anything to deny the other the fruits of the contract.

65.     Defendants' conduct has breached the implied covenant of good faith and fair dealing.

66.     As a direct and proximate result of defendants' breaches, Soft-Aid has been injured and plaintiff seeks damages.

67.     Plaintiff further seeks an injunction because, on information and belief, defendants are continuing their wrongful conduct.

## COUNT VI

## (Massachusetts Common Law Unfair Competition)

68.     Soft-Aid re-alleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 67, inclusive.

69.     The foregoing acts and conduct of defendants, including the passing off of

infringed software, constitute unfair competition under Massachusetts common law.

70.     Defendants' conduct as alleged above has damaged and will continue to damage Soft-Aid and has resulted in losses to Soft-Aid and an illicit gain of profit to defendants in an amount that is unknown at the present time.

71.     After hearing, Soft-Aid requests an award of damages, injunction and whatever other relief is just and appropriate.

## COUNT VII

### (Unfair Or Deceptive Trade Practices – G. L. c 93A §§ 2 and 11)

72.     Soft-Aid re-alleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 71, inclusive.

73.     At all times relevant to this Complaint, defendants and Soft-Aid were engaged in trade or commerce within the meaning of G.L. c. 93A, §§ 2 and 11.

74.     Some of defendants' unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.

75.     Defendants committed unfair or deceptive acts or practices within the meaning of G.L. c. 93 A, §§2 and 11 by the conduct alleged above.

76.     Defendants' unfair or deceptive acts or practices, as described above, were willful or knowing within the meaning of G.L. c. 93A, §§2 and 11 and are the direct and proximate cause of the actual damages suffered by the plaintiff.

77.     Plaintiff requests an award of multiple damages, injunctive relief, attorneys' fees and whatever other relief is just and proper.

## COUNT VIII

### (Unjust Enrichment)

16

78.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 77, inclusive.

79.     Defendants, without permission and compensation, have misappropriated the plaintiff's trade secrets, confidential information and/or proprietary information and infringed plaintiff's copyrights as aforesaid.

80.     Defendants have derived, and will continue to derive, profits and other benefits from their improper use of plaintiff's intellectual and proprietary property and have deprived the plaintiff of the economic rewards that should have accrued to it.

81.     As a result thereof, the defendants have been unjustly enriched.

WHEREFORE, plaintiff requests that this Honorable Court hear the facts and consider all the evidence in the within matter and award damages, including interest, costs and attorneys' fees, and such further relief as is just and equitable.

## COUNT IX

### (For Imposition Of A Constructive Trust Upon Illegal Profits)

82.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 81, inclusive.

83.     Defendants' conduct constitutes deceptive, fraudulent and wrongful conduct in the nature of passing off plaintiff's intellectual property as their own and otherwise misappropriating and infringing the same.

84.     By virtue of the wrongful conduct, defendants have illegally received money and profits that rightfully belong to plaintiff.

85.     Upon information and belief, defendants hold the illegally received moneyand profits that can be located and traced.

86.     Defendants hold the money and profits illegally received as constructive trustees for the benefit of Soft-Aid.

WHEREFORE, plaintiff requests that this Court impose a constructive trust on the revenues and profits received by defendants as a result of their wrongful conduct and for such other and further relief as is just and proper.

## COUNT X

### (Accounting)

87.     Soft-Aid repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 86, inclusive.

88.     Soft-Aid is entitled, pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117, to recover any and all profits of defendants that are attributable to the acts of infringement.

89.     Soft-Aid is entitled, pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of defendants' acts of infringement.

90.     The amount of money due from defendants to Soft-Aid is unknown to plaintiff and cannot be ascertained without a detailed accounting.

91.     Your plaintiff hereby requests an Order for a full and complete Accounting.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Soft-Aid, Inc.
By its attorney,


/s/ Nelson P. Lovins
Nelson P. Lovins (BBO #306020)
Lovins & Metcalf
Ten Cedar Street, Suite 22
Woburn, MA  01801
(781) 938-8800 (telephone)
(781) 938-4753 (facsimile)
npl@lovinsmetcalf.com

<u>Verification</u>

Now comes David Yashar, and, upon oath and under the pains and penalties of perjury, says that all the within facts are true to the best of my personal knowledge and, as to those facts alleged on information and belief, that I believe, in good faith, that they are true.

Signed and sworn to under the pains and penalties of perjury this 25th day of February, 2014.

/s/ David Yashar_____
David Yashar